UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| **WILLIAM H. AROWOOD,** *et al.*, ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| v. ) | No. 3:09-CV-95 |
| ) | (Phillips) |
| **LESLIE A. NEWMAN, in her official capacity** ) | |
| **as COMMISSIONER of the TENNESSEE** ) | |
| **DEPARTMENT OF COMMERCE AND** ) | |
| **INSURANCE,** ) | |
| ) | |
|     **Defendant.** ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss [Doc. 8]. Leslie A. Newman, in her official capacity as Commissioner of the Tennessee Department of Commerce and Insurance, has filed a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendant argues that Plaintiffs' claims should be dismissed pursuant to Younger v. Harris, 401 U.S. 37 (1971).

For the following reasons, Defendant's Motion to Dismiss [Doc. 8] is **DENIED**, whereby the Court finds that Younger abstention is not appropriate. While Younger may not apply, other grounds for abstention may exist. In order to determine whether abstention under other doctrines is appropriate, the parties are **ORDERED** to brief the Court on the status of the state administrative proceeding. The briefs are due by **NOVEMBER 16, 2010**, and must contain a detailed description of: (1) all events that have transpired in the state proceeding; and (2) all issues that have been decided, or will be decided in the state proceeding. In addition, all proceedings in this case are

1

**STAYED** pending the Court's determination as to whether abstention under other doctrines is appropriate.

I. **BACKGROUND**

The following facts are taken mostly from Plaintiffs' complaint. [Doc. 1]. Plaintiff ISG Holding Company, Inc. ("ISG") is a company headquartered in Oak Ridge, Tennessee, and holds two business insurance producer licenses. [Id.]. Plaintiff Bobbie Arowood is an owner of ISG, and holds an insurance producer license issued by the Tennessee Department of Commerce and Insurance (the "Insurance Department"). [Id.]. Plaintiff William M. Arowood is the husband of Bobbie Arowood, and also owns ISG. [Id.]. Plaintiffs Bobbie Arowood and William M. Arowood are married, and are the parents of Plaintiff William H. Arowood. [Id.].

In 1991, William H. Arowood was convicted of three felonies involving crimes of "dishonesty or a breach of trust." Due to these criminal convictions, he was required–pursuant to a federal statute– to obtain written consent from a state agency before he could practice insurance. *See* 18 U.S.C. § 1033(e)(2). On May 29, 2004, William H. Arowood received written consent from the South Carolina Department of Insurance that he could engage in the practice of insurance. Under 18 U.S.C. § 1033(e)(2), a person convicted of "any criminal felony involving dishonesty or a breach of trust" must receive written consent from "any insurance regulatory official authorized to regulate the insurer," before that person may engage in the practice of insurance. Id. After receiving written consent from the South Carolina Department of Insurance, William H. Arowood began working for the Accident Insurance Company ("AIC").

William H. Arowood sought similar consent from Georgia and Mississippi pursuant to 18 U.S.C. § 1033(e)(2). Regulatory officials from both Georgia and Mississippi informed him that

South Carolina's consent was sufficient for the purpose of engaging in the practice of insurance in their respective states. He received written consent from Georgia and Mississippi in January 2008.

On April 17, 2007, AIC submitted an application to the Insurance Department for certificate of authority to operate as an insurance company in Tennessee. On July 17, 2007, William H. Arowood submitted an application to the Insurance Department for written consent pursuant to 18 U.S.C. § 1033. On December 26, 2007, both AIC and William H. Arowood withdrew their applications.

On November 18, 2008, Defendant notified William M. Arowood and Bobbie Arowood (both owners of ISG) that she intended to institute proceedings to revoke ISG's insurance provider license. In addition to the letters, Defendant included drafts of the petitions seeking revocation and monetary penalties. The drafts listed allegations of wrongdoing, including an allegation that William M. Arowood, Bobbie Arowood, and ISG violated 18 U.S.C. § 1033 by knowingly permitting William H. Arowood to engage in the practice of insurance in the State of Tennessee, without having received written consent from the Insurance Department. Each letter included the following statement:

> In accordance with Tennessee Code Annotated § 4-5-320(c), you are hereby provided an opportunity to show compliance with all lawful requirements for the retention of [Plaintiffs'] license. Please provide the Division with any information or documents that evidence [her/his/its] compliance with the applicable laws by December 3, 2008. The Division will consider the information and determine whether you have shown compliance. If a response is not received by December 3, 2008, or should your response fail to show [Plaintiffs'] compliance with all lawful requirements for the retention of [her/his/its] license, the Division will file the attached petition with the Tennessee Administrative Procedures Division and request that a hearing date be set.

[Defendant's Memorandum of Law in Support of her Motion to Dismiss, Doc. 9 at 5-6]. In response

to the letters, Plaintiffs' counsel contacted the General Counsel for the Insurance Department on November 21, 2008, in an attempt to discuss the possibility of negotiating a settlement. Defendant states that from November 2008 through March 2009, Plaintiffs' counsel continued to negotiate with the Insurance Department.

On March 6, 2009, Plaintiffs filed suit in federal court. Plaintiffs also filed a petition for declaratory relief with the Insurance Department on March 6, 2009- a few hours after they filed their federal complaint. In April 2009, Defendant filed formal petitions against the federal Plaintiffs.

On March 30, 2009, Defendant filed a Motion to Dismiss [Doc. 8], arguing that the case should be dismissed pursuant to Younger, 401 U.S. 37. Plaintiffs have filed a response [Doc. 14], and Defendant has replied [Doc. 16].

## II. ANALYSIS

### A. Overview of Younger Abstention

As the Court of Appeals for the Sixth Circuit has stated, "abstention from jurisdiction is the exception, not the rule . . . federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.'" Sun Ref. & Mktg. Co. v. Brennan, 921 F.2d 635, 639 (6th Cir. 1990) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). However, "there are a few . . . classes of cases in which a federal court should decline to exercise that jurisdiction." Sun Ref, 921 F.2d at 639. While there are many different abstention doctrines[1],

---

[1] In addition to the abstention doctrine established in Younger v. Harris, 401 U.S. 37, (1971), the Supreme Court established a separate doctrine in Colorado River Conservation Dist. v. United States, 424 U.S. 800, 814 (1976). *See also* Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983) (reaffirming Colorado River abstention). In addition, the Supreme Court established additional doctrines in R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941), and Burford v. Sun Oil Co., 319 U.S. 316 (1943). While these abstention doctrines share common factors, courts treat them as independent doctrines. *See* Devlin v. Kalm, 594 F.3d 893, 896 (6th Cir. 2010) (recognizing that the abstention theories are distinct grounds for staying or dismissing lawsuits).

4

Defendant's Motion to Dismiss [Doc. 8] is based only upon Younger abstention.

As the Court of Appeals for the Sixth Circuit has stated, "Younger abstention is not a question of jurisdiction, but is rather based on 'strong policies counseling against the exercise of such jurisdiction.'" O'Neil v. Coughlan, 511 F.3d 638, 643 (6th Cir. 2008) (quoting Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 626 (1986)). In Younger, the Supreme Court held that absent "bad faith, harassment or any other unusual circumstance," 401 U.S. at 53-54, federal court abstention "is appropriate where a plaintiff invokes federal jurisdiction as a basis for obtaining injunctive relief against state-court criminal proceedings." Squire v. Coughlan, 469 F.3d 551, 555 (6th Cir. 2006) (citing Younger, 401 U.S. at 53-54). Although Younger dealt with federal court abstention in relation to on-going state criminal proceedings, the doctrine has been expanded to include state administrative proceedings that are "judicial" in nature. *See* Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). As the Supreme Court has stated, Younger applies to "state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings, the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." Dayton Christian Schs., 477 U.S. at 627.

To determine whether abstention under Younger is appropriate, courts apply three factors: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important [state] interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." O'Neil, 511 F.3d at 643 (quoting Sun Ref., 921 F.2d at 639). Plaintiffs argue that none of the factors apply in this case.

### B. Applying the First Element of Younger

To satisfy the first element of Younger, the state proceeding must be both "ongoing" and

"judicial" in nature.  *See* New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 369-70 (1989) ("NOPSI").  Neither party contests that Defendant's enforcement proceedings are judicial in nature.  Rather, the dispute is about whether the state proceedings were "ongoing" when the federal complaint was filed.

The relevant time period for assessing the first element is when the federal complaint was filed.  While the Supreme Court in Hicks v. Miranda, 422 U.S. 332, 349 (1975), suggested that courts should focus on whether "proceedings of substance on the merits" have taken place in the federal case, courts remain split on the timing issue.  *See*, *e.g.*, Pennzoil v. Texaco, 481 U.S. 1, 17 (1987) (analyzing the first element of Younger by focusing on when the federal complaint was filed); *but see* Doran v. Salem Inn, Inc., 422 U.S. 922, 929 (1975) (holding Younger applicable when "federal litigation was in an embryonic stage and no contested matter had been decided" when the state criminal summons had been issued).  While courts in other circuits may be split on the timing issue, the Court of Appeals for the Sixth Circuit is quite clear: the relevant time period is when the federal complaint was filed.  *See* Danner v. Bd. of Prof'l Responsibility of Tenn. Supreme Court, 277 F. App'x 575, 579 (6th Cir. 2008) (in analyzing the first Younger element, "we have looked previously to the day of the federal complaint's filing.  If the state proceeding was pending at the time of the filing, we consider the matter ongoing for purposes of the first Younger question."); Loch v. Watkins, 337 F.3d 574, 578 (6th Cir. 2003) ("First, when determining whether state court proceedings involving the plaintiffs are pending, we look to see if the state court proceeding was pending at the time the federal complaint was filed.") (citing Zalman v. Armstrong, 802 F.2d 199, 204 (6th Cir. 1986)); Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n, 925 F.2d 962, 969 (6th Cir. 1991) ("[I]f a state proceeding is pending at the time the action is filed in federal court, the first

6

criteria for Younger abstention is satisfied."). Thus, the Court will analyze Younger's first element by looking at the time the federal complaint was filed. In this case, the federal complaint was filed on March 6, 2009. Thus, the Court must determine whether the state judicial proceeding was "ongoing" at that time.

Having decided that the relevant time period is when the federal complaint was filed, the Court must decide the following issue: did the letters and draft petitions sent by Defendant on November 18, 2008 "commence" the state judicial proceeding for Younger purposes? Or did the state judicial proceedings commence in April 2009 when Defendant filed a formal petition? If it is the latter, then the state proceedings were not "ongoing" at the time the federal complaint was filed.

Defendant argues that state proceedings were "ongoing" for two reasons. First, Defendant argues that because Plaintiffs filed a petition for declaratory relief with the Insurance Department on March 6, 2009, that commenced the state proceedings. [*See* Defendant's Memorandum of Law in Support of her Motion to Dismiss, Doc. 9 at 16-20]. Second, Defendant argues that the state proceeding commenced when Plaintiffs received letters on November 18, 2008. [Id.]. Both of Defendant's arguments are without merit.

### 1. Plaintiffs' Request for Declaratory Relief From the Insurance Department Did Not Mark the Beginning of "Coercive" State Proceedings

For Younger to apply, the state judicial proceeding must be a "coercive" action brought by the state (or state agency), rather than a "remedial" action brought by the federal plaintiff. *See, e.g.* Dayton Christian Schs., 477 U.S. at 627 n.2 (1986) (emphasizing that the "administrative proceedings here are coercive rather than remedial"). In Devlin v. Kalm, the Court of Appeals for the Sixth Circuit held that Younger did not apply because the federal plaintiff initiated the state

7

proceeding, not the state. 594 F.3d 893, 895-96 (6th Cir. 2010). As the Court of Appeals stated:

> . . . the MCSC [state administrative] proceedings [in this case] differ from the lawyer disciplinary proceedings at issue in Middlesex County and Fieger. Those lawyer disciplinary proceedings were initiated by the state to redress a wrong allegedly committed by the federal plaintiff, *whereas the MCSC proceeding at issue here were initiated by Devlin, the federal plaintiff, to redress a wrong allegedly committed by the state. . . . Accordingly, Younger does not bar the present federal suit.*

Id. (emphasis added). In Devlin, the Court of Appeals noted that other circuits have limited Younger to cases in which the state proceedings were "coercive." *See* Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 522 (1st Cir. 2009) (recognizing that "[state] proceedings must be coercive, and in most-cases, state-initiated, in order to warrant abstention"); Brown ex rel. Brown v. Day, 555 F.3d 882, 889 (10th Cir. 2009) (holding that Younger did not bar a Medicaid beneficiary's federal suit challenging termination of benefits, even though the beneficiary filed a state action on the same ground, because "[t]he state did not compel [the federal plaintiff] to participate in the [state] proceedings, but to secure relief from the state's allegedly unlawful conduct by recovering her Medicaid benefits").

As the Court of Appeals for the Sixth Circuit recognized in Devlin, Younger only applies to "coercive" actions. *See* 595 F.3d at 895-96. When Plaintiffs filed a petition for declaratory relief with the Insurance Department, that did not commence "coercive" proceedings for Younger purposes. Id. Moreover, in any event, Plaintiffs' request for declaratory relief was filed after the federal complaint was filed. The federal complaint was stamped by the Clerk of the Court at 2:59 EST on March 6, 2009. [Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Doc. 14 at 8]. Plaintiffs' request for declaratory relief from the Insurance Department was filed at 4:15 p.m. CST on March 6, 2009. [Id.].

8

## 2. Defendant's Letters Sent On November 18, 2008 Did Not Mark the Beginning of State Judicial Proceedings for Purposes of Younger

Next, Defendant argues that state judicial proceedings began when the Insurance Department sent § 4-5-320(c) letters on November 18, 2008. Defendant's argument fails for one reason: she ignores the distinction between threats to initiate enforcement proceedings, and the actual commencement of those proceedings.

On November 18, 2008, Defendant sent letters to Plaintiffs William M. Arowood and Bobbie Arowood indicating that "she intended to institute proceedings to revoke their insurance producer licenses and assess civil monetary penalties against them, and she submitted drafts of the petitions seeking revocation and monetary penalties." [Defendant's Memorandum of Law in Support of her Motion to Dismiss, Doc. 9 at 17]. Under the Tennessee Administrative Procedures Act–which lists the procedures necessary to suspend or revoke a professional license–the Insurance Department was required to send letters to Plaintiffs notifying them of potential enforcement proceedings. The statute provides, in relevant part:

> No revocation, suspension, or withdrawal of any license is lawful unless, *prior to the institution of agency proceedings*, the agency gave notice by mail to the licensee of facts or conduct that warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license.

T.C.A. § 4-5-320(c) (emphasis added). By the express terms of the statute, a letter must be sent to a licensee "prior to" the commencement of proceedings before an agency. As the Court of Appeals for the Sixth Circuit has stated, federal courts should look to state case law in determining when a state administrative proceedings commences for purposes of Younger. *See* O'Neil, 511 F.3d at 643 (looking to Ohio case law to determine whether the filing of a grievance commenced state judicial

proceedings for purposes of Younger). In Martin v. Sizemore, the Tennessee Court of Appeals explained the due process requirements of administrative proceedings and the purpose of T.C.A. § 4-5-320(c). 78 S.W. 3d 249, 267 (Tenn. Ct. App. 2001). In analyzing the statute, the court recognized that "[t]he State commenced this disciplinary proceedings against Mr. Martin in May 1992," id. at 260, when the government formally "filed a notice of charges with the Tennessee Board of Examiners for Architects and Engineers," id. at 258. Thus, it appears that the Tennessee Court of Appeals recognizes that agency proceedings begin with the filing of a formal complaint, not with the § 4-5-320(c) letter.

Despite the clear language of T.C.A. § 4-5-320(c), Defendant argues that the "administrative proceeding began on November 18, 2008, when the Commissioner submitted the draft petitions to Plaintiffs' counsel." [Defendant's Memorandum of Law in Support of her Motion to Dismiss, Doc.9 at 18]. The letters containing the draft petitions included the following statement:

> In accordance with Tennessee Code Annotated § 4-5-320(c), you are hereby provided an opportunity to show compliance with all lawful requirements for the retention of [Plaintiffs'] license. Please provide the Division with any information or documents that evidence [her/his/its] compliance with the applicable laws by December 3, 2008. The Division will consider the information and determine whether you have shown compliance. If a response is not received by December 3, 2008, or should your response fail to show [Plaintiffs'] compliance with all lawful requirements for the retention of [her/his/its] license, the Division will file the attached petition with the Tennessee Administrative Procedures Division and request that hearing date be set.

[Id. at 19]. As Plaintiffs correctly recognize, "the Tennessee Code delineates between any notice provided pursuant to Section 4-5-320(c) and the beginning of 'agency proceedings.'" [Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Doc. 14 at 9].

First, Defendant mis-characterizes the nature of the letter. She argues that "[t]he letter

10

informs the recipient that any information or documents that evidence compliance with the applicable laws *must be received by December 3, 2008*; otherwise, the petitions would be filed with the Tennessee Administrative Procedures Division and a hearing date would be requested." [Id.]. In reality, Defendant did not file formal complaints against the federal Plaintiffs until April 2009, well past the alleged December deadline. Contrary to Defendant's argument, the letter warns Plaintiffs of possible enforcement proceedings, not that enforcement proceedings would actually occur. Defendant's own conduct–the fact that formal charges were not brought on December 3, 2008, as stated in the letter–indicates the amount of discretion that the Insurance Department has in filing formal charges. The letters–although required under Tennessee law–were nothing more than threats of enforcement proceedings, not the commencement of such proceedings.

Following Defendant's logic, state judicial proceedings would commence any time a state agency *considers* filing formal charges. Courts across the country have rejected this argument. In an often-cited decision, Louisiana Debating & Literary Ass'n v. New Orleans, the Court of Appeals for the Fifth Circuit held that state administrative proceedings were not "ongoing" when the state agency had only threatened enforcement proceedings. 42 F.3d 1483, 1490 (5th Cir. 1995). In Louisiana Debating, the city Human Relations Commission sent letters to private clubs informing them that residents had filed complaints against them. Id. at 1487. The letters notified the clubs "of the complaint, requested information from them, and advised them of possible options to resolve the complaint." Id. According to the court, the issue was "whether the complaint with the Commission and its notification letter constitute an ongoing state judicial proceeding, so as to satisfy the first prong of Younger abstention." Id. at 1490 (internal quotations and citation omitted). The court began its analysis by distinguishing the Supreme Court decisions in Dayton Christian Schools and

11

Middlesex, in which the Supreme Court held that the district courts should have abstained under Younger. As the court in Louisiana Debating explained, "the regulating agencies in those cases [Dayton Christian Schools and Middlesex] had investigated the allegations, made determinations that probable cause existed, and served formal charges on the entities." Id. (citing Dayton Christian Schs., 477 U.S. at 623-24; Middlesex, 457 U.S. at 428). In contrast, the commission in Louisiana Debating had not filed formal complaints against the private clubs, nor had any hearings been held. 42 F.3d 1490. The letters in Louisiana Debating merely put the federal plaintiffs on notice that enforcement proceedings could be brought in the future, not that the proceedings had actually begun. *See* id.

Much of the court's analysis in Louisiana Debating was based upon Telco Commc'ns., Inc. v. Carbaugh, 885 F.2d 1225 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990). In Telco, the Court of Appeals for the Fourth Circuit held that Younger did not apply because the state agency had only *threatened* to institute enforcement proceedings when the federal complaint was filed. Id. In Telco, a state agency commenced an investigation of Telco following complaints of wrongdoing by the company. Id. at 1227. The agency sent a letter to Telco listing the alleged violations. Id. In addition, the state agency invited Telco to an informal fact-finding conference. Id. Following the conference, Telco filed a complaint in federal court against the agency. Id. The agency argued that the letter–in which Telco was notified of the alleged violations–constituted the beginning of state proceedings for purposes of Younger. Id. The court rejected that argument, finding that the state administrative proceeding had not begun for Younger purposes. Id. In particular, the court held that it would not "hold that Younger abstention is required whenever a state bureaucracy has initiated contact with a putative federal plaintiff." Id. at 1229. As the court recognized, "the [state agency's]

12

contention–that abstention is required whenever enforcement is threatened–would leave a party's constitutional rights in limbo while an agency contemplates enforcement but does not undertake it." Id. In conclusion, the court held that *"the period between the threat of enforcement and the onset of formal enforcement proceedings* may be an appropriate time for a litigant to brings its [constitutional] challenges in federal court." Id.

A recent decision by the Court of Appeals for the First Circuit reaffirms the distinction between threats of enforcement proceedings, and the actual commencement of enforcement proceedings. In Guillemard-Ginorio, the defendants–which included the Insurance Commissioner of Puerto Rico– argued that "the entire OIC [state administrative] proceedings against the plaintiffs, including the issuance of its Notice of Investigation . . . and the agency's ex parte subpoenas of plaintiff's financial records in January 2002 . . . constitute 'state judicial proceedings' that were 'ongoing' at the time that plaintiffs filed their federal action." 585 F.3d 508, 518 (1st Cir. 2009). The court rejected the defendants' argument, finding that "the agency's investigation of the plaintiffs was at too preliminary a stage to constitute a 'proceeding' triggering Younger abstention." Id. at 519. At the time the plaintiffs filed their federal action, the state agency had notified the plaintiffs that they were being investigated. Id. However, "no formal charges of any kind had been brought against them." Id. at 520. As the court stated, "while 'the threat of enforcement' against plaintiffs for insurance code violations had been raised at the time plaintiffs filed their federal complaint by virtue of the continuing OIC [state agency] investigation, nothing resembling formal enforcement proceedings had yet commenced." Id.

Much of the court's reasoning in Guillemard-Ginorio was based upon Telco: "In so holding, we are persuaded by the distinction drawn by the Fourth Circuit in Telco between the

13

commencement of 'formal enforcement proceedings,' at which point Younger applies, versus the preceding period involving only a 'threat of enforcement,' during which abstention is not required." Id. (citing Telco, 885 F.3d at 1225). As the court stated, "requiring commencement of 'formal enforcement proceedings' before abstention is required, better comports with the Supreme Court's decisions in Younger and its progeny, *in which an indictment or other formal charge had already been filed against the parties seeking relief at the time the federal action was brought*." Id (emphasis added). *See* Younger, 401 U.S. at 38-39 (the federal plaintiff was a defendant indicted in a state criminal action that was being prosecuted when the federal complaint was filed); Huffman v. Pursue, Ltd., 420 U.S. 592, 598-99 (1975) (the federal plaintiffs were already defendants in a nuisance action brought by county officials in state court); Samuels v. Mackell, 401 U.S. 66, 67 (1971) (the federal plaintiff had already been indicted and was being prosecuted in state court when the federal complaint was filed); Middlesex, 457 U.S. at 428-29 (the state disciplinary organization had already formally charged the federal plaintiff before the federal complaint was filed).

The Court finds that the present case is similar to Louisiana Debating, Telco, and Guillemard-Ginorio. Like those cases, the state agency threatened the federal plaintiffs with an enforcement proceeding, but no proceeding had actually begun prior to the federal complaint being filed. The Insurance Department did not file a formal complaint until April 2009, weeks after the federal complaint was filed. Nor did the Insurance Department complete its investigation prior to the federal complaint being filed. All that the Insurance Department did was threaten Plaintiffs with possible enforcement proceedings. The letters that the Defendant sent, as required by T.C.A. § 4-5-320(c), merely notified Plaintiffs of possible enforcement proceedings. Even though the letter stated that enforcement proceedings would commence in December 2008 if the Plaintiffs did not show that

14

they complied with the relevant Tennessee statute, formal petitions were not filed until April 2009. The letters, like the notifications in Louisiana Debating, Telco, and Guillemard-Ginorio, notified the Plaintiffs that enforcement actions could be brought-not that they actually would. If the Court accepted Defendant's logic, it would ignore the clear distinction between threats of enforcement proceedings, and the commencement of actual proceedings (which is normally done by filing a formal complaint or grievance).

Finally, the Court recognizes that while formal charges are not always required to commence "state judicial proceedings" for purposes of Younger, *see* Squire, 469 F.3d at 554, none of the factors in that line of cases are present. In Squire, the Court of Appeals for the Sixth Circuit held that abstention was appropriate when the Disciplinary Counsel (the state agency) had completed its investigation and a probable-cause hearing had been set, even though formal charges had not been filed. Id. However, in the present case the Insurance Department had not completed its investigation prior to the filing of the federal complaint, and a hearing had not been formally set. Thus, the present case is different than the Squire line of cases, in which courts held that state judicial proceedings had commenced prior to the filing of a formal complaint.

Having found that the first element of Younger was not met, Defendant's Motion to Dismiss [Doc 8] is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. 8] is **DENIED**, whereby the Court finds that Younger abstention is not appropriate. While Younger may not apply, other grounds for abstention may exist. In order to determine whether abstention under other doctrines is appropriate, the parties are **ORDERED** to brief the Court on the status of the state administrative

15

proceeding. The briefs are due by **NOVEMBER 16, 2010**, and must contain a detailed description of: (1) all events that have transpired in the state proceeding; and (2) all issues that have been decided, or will be decided in the state proceeding. In addition, all proceedings in this case are **STAYED** pending the Court's determination as to whether abstention under other doctrines is appropriate.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge